All right, our third case this morning is number 21-10590, Brooks v. Miller. Mr. Pateebs. Good morning. May it please the court. My name is Dimitri Pettibas and I represent the appellate, Eric Brooks. We're asking this court to reverse the district court's summary judgment because the district court failed to view the evidence in the light most favorable to Mr. Brooks. Specifically, the district court rejected Mr. Brooks's sworn allegations because the court concluded that those allegations were blatantly contradicted by a dash cam recording. But the dash cam did not capture the key events in this case. Can I ask you a quick question just at the outset? This is Judge Newsom. So obviously this is a case, we appreciate you taking this case as a court-appointed lawyer, and you took the opportunity, which I think was the right one, to refile an opening brief. In the pro se opening brief, there's lots of talk about the dash cam being tampered with. And in your counsel brief, the tampering allegations seem to have sort of evanesced, and your arguments really are about which events occurred on camera and which occurred off camera. Those are two sort of different things. Are we still treating this as a tampering case, or is it now really just a case about which events occurred on and which events occurred off camera? Your Honor, I think the way I read Mr. Brooks's brief is he really does make the same argument I do, and that's that the camera doesn't show what happened. He does have maybe a few sentences or something where he talks about tampering, but as you noted, that's not something I raised, and I don't think it's necessary to reverse the district court here. Because the issue is really what does the camera show? And here, it doesn't show the moment when Mr. Brooks and Officer Miller talked to each other, the arrest, and the key events during that time. It does, though, show – I mean, the way I tend to think about this is that you have to break the case down into kind of modules because there is sort of the arrest, the initial arrest, what prompts it and what ensues from it. And that piece of it sort of is caught on the video, right? I mean he gets out of the driver's side of the car and then denies that he was driving and was arrested for driving without a license. So that piece of it, I find Scott v. Harris there pretty persuasive. There might be other aspects of the case that aren't as clearly captured on the video or audio where I think you might have a better case. And I'm just wondering if you view it the same way in terms of sort of like breaking the case down into its constituent claims. Yeah, I think that's fair. You know, there's definitely some parts where we see them on camera talking to each other, doing other things. But the key moment, the moment when Mr. Brooks alleges that Officer Miller slammed him into a patrol vehicle, that's not on camera. So the dash cam recording cannot blatantly contradict Mr. Brooks' allegation about that. And in fact, in fairness to the district court, the district court understood that principle of law. In its order, it said, you know, facts not captured on camera are viewed in the light most favorable to the non-movement. And this court has held the same thing. You know, it said where recording does not clearly depict an event or action like here and there's evidence going both ways on it. The court must accept the non-movement facts. Where the district court erred here is it said there's no allegation that key events unfolded outside the view of the camera. And I think here the district court just completely missed what Mr. Brooks was arguing. He said in his summary judgment response, the key events in this case occurred, quote, off camera. And even in his objections to the magistrate judge's R&R, he argued the same thing. So the district court just ignored all of this. So the bottom line is the court was required to accept his allegations as true. With that, I'll now turn to the merits of his claims, beginning with the claim of excessive force. As this court knows, claims of excessive force are analyzed under the objective reasonableness test set forth in Granby Connor. And the first factor of this test is the severity of the crime at issue. It makes sense that if someone was being arrested for a severe crime like murder, the police might need to use some force to effectuate the arrest. Here, however, Mr. Brooks was arrested for what this court has called the far or lowest misdemeanor side of the spectrum, driving without a valid license. As this court held in Stevens v Giovanni, the investigation of this crime does not rise to the level of criminal conduct that should have required the use of force. The second grand factor is whether the suspect poses an immediate threat to the safety of the officers or others. And here we don't have any of that either. The camera shows that Mr. Brooks is much smaller than Officer Miller. He acts calmly throughout the incident, and neither the district court nor Officer Miller had even suggested that Mr. Brooks was a threat. Can I ask you a factual question that I have from the record? In Mr. Brooks's version of events, was he slammed into his own car or the car of a police officer that was nearby? Or does he specify? It's a little ambiguous in the complaint. He says a couple of times he says the patrol vehicle. At one point, he says he suggests it was Officer Miller's patrol vehicle. I think the camera shows that that can be possible. But there was another patrol vehicle up ahead and we can't see the front or the side of that patrol vehicle. So there's also other officers on scene who might have had a patrol vehicle. So I think we can tell from the complaint that it was a police vehicle and not a Kia. Can I ask you a quick question, just because I know that you've got limited time, I'll just speak for myself. I tend to think that with respect to the stop and arrest claims, you may be kind of stuck with Scott versus Harris. But as to the excessive force and deliberate indifference claims, those occur off camera and you might have sort of a stronger case. Because with respect to both claims, you'll need to overcome qualified immunity. Can you just explain to me briefly on each of those claims, excessive force and then deliberate indifference? What your sort of best case is for clearly establishing the law in your favor? So, first of all, with the excessive force, I don't think I need a specific case. I think this is one of those obvious clarity cases where we have this line of case law that has said gratuitous force is excessive. And here this was this was wholly gratuitous. There was no reason at all to slam slam it into a car. And there's plenty of cases that set that up. And all these cases, too, they also used the obvious clarity principle. So but, you know, even if even if this court doesn't think it's an obvious clarity case, I cited seven cases in my supplemental brief that I think are materially similar. Maybe one to point out is Levy-Ferraro. That's also where the plaintiff was slammed into a car. And it was another case where there was no need for the force. The plaintiff was arrested for honking her horn on a busy street. There's also another case, I believe, where a single punch to the stomach was considered excessive force also because it was gratuitous. And then with respect to the deliberate indifference claim, the deliberate indifference claim, I think I point to the case law I cited in my supplemental brief where this court has held it's clearly established that knowledge of the need for medical care and intentional refusal to provide that care constitutes deliberate indifference. And here, that's what we have here. Mr. Brooks alleges in his sworn complaint that Officer Miller refused his requests. So this isn't a case where we're alleging that the officer was merely negligent and didn't provide enough care or the care that he did provide was insufficient. The facts are that Officer Miller did nothing in response to Mr. Brooks' pleas for help. And this court has held it's clearly established that doing nothing is deliberate indifference. Is that true without respect to what sort of the complainant's sort of complaint is? No matter what he says, I mean the officer just has to take it at face value. Like if he says here I've got broken wrists, the officer has to assume he's got broken wrists and take him to the ER or something. I think the officer has to do something. The officer maybe has to investigate or look at what the plaintiff is doing. But here, we don't have any of those facts. We don't have Officer Miller saying, oh yeah, I looked at his wrists and they look fine, he didn't need any help. Instead, the facts are that Officer Miller did nothing. Counsel, it's deliberate indifference to medical need, right? Right. Okay, so in this case, he doesn't have any permanent injuries, right? Not that he's alleged. Okay, and so it would be, I guess, just for the period where he had the discomfort but he was given pain medications, right? At some point at the jail, he was given pain medications. The record doesn't say when that happened and it certainly doesn't say that Officer Miller took any steps for that to happen. Okay, so it would be, I guess, just for the period when he was in the officer's custody. Is that right? Right. I mean, is it a problem for your client that, you know, that that was a relatively short period and after that, he had no, I mean, thankfully, he had no permanent injuries, but he had no permanent injuries. We do hear the officer saying on the video, how to sit in the car so that he won't, you know, he won't be in pain when he puts them into the vehicle. So, is that a problem for your client? So, this court has recognized two forms of deliberate indifference. There's delay, but then there's also intentional refusal to provide care, and that's what we have here. It's not a case where he said, oh, I'll give you some care in 30 minutes, or yeah, we'll get to that later. Here the facts are that Officer Miller refused to provide care, and if I could quickly, I just cite Brown v. Hughes. I believe I cited it in the brief. That was a case where there's a prison case that the inmate told the guard, I think my foot's broken, and one of the defenses was, well, he eventually got, you know, sent to the hospital, but what this court says, well, those are other defendants that sent him to the hospital, not the defendant here. But to piggyback off of questions that Judge Newsome and Judge Rosenbaum asked, doesn't a deliberate indifference claim require a serious medical need? In other words, if he had suffered, and I'm going to minimize this intentionally, but if he had suffered a paper cut, right, and the police officer had done nothing about the paper cut, you probably would not have a deliberate indifference claim, right? I agree. But you think that the pain he was complaining about was serious enough that it necessitated some degree of attention or medical care by the officer? Yes, Mr. Brooks had a serious medical need. He told Officer Miller that he thought his wrists were broken or damaged, and he couldn't feel his wrists or his hands. And this court has held in Brown v. Hughes that broken bones represent a serious medical need, and it says so in subsequent cases. But I guess, not to prolong your time at the podium, but I mean, I guess this goes to the question I was asking earlier. So if on Judge Jordan's hypothetical, he has a paper cut, but he says to the officer, I'm going to bleed out, does the officer just have to take his word for it that, whoa, this is serious, I'd better take him to the ER? Or can the officer exercise a little bit of judgment if he says I have pain in my wrists, that this is part and parcel of being cuffed? I think the latter. And so when this case goes to trial, Officer Miller can tell the jury, you know, I saw Mr. Brooks and he looked fine, and I didn't think he had any issues. But we don't have any testimony like that in this record. So it's not really an issue. All right, you've saved your time for rebuttal, and we want to thank you before I forget to do it at the end for taking this case on behalf of Mr. Brooks. We really do appreciate it. Thank you. Okay, Miss Painter. Good morning, Your Honors, and may it please the court. My name is Jennifer Painter and I represent the appellee, Officer Damon Miller. So to begin, a key piece of record evidence that we have in this matter is a recording of the incident between Officer Miller and Mr. Brooks on November 2, 2016. Let me ask you this just before you get started. So do you agree, just to put to you the same question that I asked Mr. Patevas, do you agree that we sort of need to break this case down into modules because some things are caught on camera and some aren't? I mean, to his point, I don't think he's giving up on the arrest-related claims, but I think he recognizes that he's got a tougher road to hoe on those. But excessive force, I think, frankly, you've got a tougher road to hoe because the camera doesn't help you there. Your Honor, we do believe that we have to address each of the three claims that Mr. Brooks makes and view the video or the record evidence in light of that individual claim. But for each of these claims, and I can just go ahead and start with the excessive force, we do believe that the recording does blatantly contradict Mr. Brooks' testimony as to what occurred on November 2, 2016. So for the excessive force claim, Mr. Brooks is making two separate allegations that he says violated his Fourth Amendment rights. The first one is that he says that at minute 213 to 219, he was slammed into a patrol vehicle. The second argument that he makes is that the handcuffs were applied too tight during arrest so as to create pain and numbness in his wrist. So for the first claim that he was slammed into a patrol vehicle, we know from the recording that at 213 to 219, that is during the time that Officer Miller is arresting him, we can hear the handcuffs being applied. He's telling him to please turn around and put his hands behind his back and explaining that he's being arrested for a no valid driver's license. So immediately after that incident occurs, and we also know, and it's not a dispute, that Mr. Brooks says two patrol vehicles were at the park. So we have a patrol vehicle directly in front of Officer Miller's patrol vehicle, and then we have the black Kia. So when we review the recording and the video, immediately following this arrest and alleged slam, you can see Officer Miller and Mr. Brooks walking to Officer Miller's patrol car. And they're nowhere near either of the two patrol cars that are at the park, making it impossible for Mr. Brooks to have just been slammed into a patrol car. Let me ask you the factual question that I asked Mr. Patev at the other end. Where were the cars stationed? So you've got the dash cam video from the patrol car that's behind the Kia, right? Yes, Your Honor, that is correct. Where is Officer Miller's car in relation to those two cars? And Your Honor, let me rephrase that. So actually, the car that's parked directly behind the Kia, that is not the car that has the dash cam recording system. So we see on the recording, we have the black Kia and then a little ways back, right, those cars are not blocking the Kia in. We have another patrol vehicle. That first patrol vehicle does not have the dash cam recording system. And then directly behind that, that is Officer Miller's patrol vehicle that does have the dash cam recording system. So, you know, we really do urge the court when it comes to the issue of the video evidence and what occurred on camera and did not occur on camera. I think it's right at minute three. So it's directly after this arrest and the alleged slam. You can clearly see where the parties are coming from. And it really is nowhere remotely close to either of these two patrol vehicles. Again, making it impossible to harmonize Mr. Brooks' testimony with what the record evidence shows. But Council, during that period, I mean, you do hear a noise, right, before the cuffs go on. And I don't know what that noise is. It might be something completely unrelated. But it makes it difficult to completely rule out the idea that he was slammed into a car, whether it was the patrol car or some other car. Why isn't that enough to survive summary judgment since there's nothing that I can see that clearly contradicts his statement? Sure. So there is there is a little bit of a noise that you do hear. I would argue you actually do hear that noise throughout the entire recording. It comes up a few times. So most likely it's on the officer's lapel. But, you know, even putting that aside, if you look at past cases that this circuit has addressed where they view, you know, what exactly does the recording show? Does it blatantly contradict the plaintiff's testimony? Is it on camera? We'll look at Cantu, Kormeghani, Shaw. And it's so fact specific that the courts are addressing this issue and it could be very nuanced. Like in Cantu, it was, you know, was the individual grabbing a taser or pushing it away? And ultimately what the court decided in those cases is that a reasonable party could really find either way. Here, the difference with Mr. Brooks case is that when you review the recording, you review this interaction with Officer Miller, the noise that we hear at that six second interval and then the location from which they're walking from. And again, you know, the no injuries, no bruises, no cuts, no scrapes. Officer Miller is not even touching Mr. Brooks. They're both just strolling over to the patrol car. It makes it so utterly unbelievable or discredited for a reasonable trier of fact to believe Mr. Brooks' version of events. And that's really where the crux of the city's argument lies when it comes to the recording for the alleged slam. Go ahead, please, Judge Rosenbaum. Thank you. But again, my question is, something happens during the arrest. Would you agree we can't see when the arrest happens on the video? Yes, Your Honor. We do agree that takes place outside camera. Okay. We hear a sound, but we can't see the arrest. And can we rule out that he has been slammed against some car, whether a patrol car or some other car? I mean, can we rule that out? And if so, how? Well, Mr. Brooks, our understanding of the record is that Mr. Brooks is consistent that it was a patrol car that he was slammed against. So we do believe the video evidence as far as where the parties are coming from would rule that out. But I should also add, it's important to note that when it comes to the alleged slam on the patrol vehicle, even if we were to put the video completely aside, Mr. Brooks' allegations as he states that he was turned around and slammed into a patrol car during arrest, that would still fail as a matter of law because he would not be able to overcome qualified immunity in that instance. So, and I can kind of move into that, that direction. So just briefly before you do, I understand the pivot. I understand the pivot. I think it might be a wise pivot. But it just seems to me that we're really stretching Scott v. Harris here. Like in the pre-Scott v. Harris days, whatever Brooks said here would have gone, basically, and he would have gotten a trial. And then Scott v. Harris comes along and the Supreme Court seems to say, OK, look, come on. In some circumstances, the video evidence is just so conclusive that we can't allow the plaintiff just to sort of like plead his way to a trial. But, I mean, surely that's got to be a fairly narrow exception to the rule that we, at summary judgment, assume all the bad stuff as the plaintiff has alleged it. And it just feels, it feels to me like we're kind of straining here to make Scott v. Harris fit. Our response to that, Your Honor, is that ultimately what Scott v. Harris relies on is that if there is this recording, right, this unquestioned objectivity that so blatantly contradicts a party's testimony that no reasonable trier of fact could believe that, then that's where that comes in. And we've seen this court apply it to things outside of just video. You know, it's White v. Georgia involved medical records or medical testimony. And from that alone, the court was able to say it is just so unbelievable to buy into what the plaintiff is alleging occurred here. And we believe that when you do review the record evidence in this matter, it is so incredible with what Mr. Brooks is alleging when you compare it to what you see. But, you know, we certainly understand the court's opinion on that. And that's why it is important for us to know that if we put the recording aside, Mr. Brooks was unable to overcome qualified immunity. To touch on a few of my adversary or my opponent's points on this issue. So we know that Graham has instructed us that when an officer makes an arrest and necessarily carries with it the right to use some degree of physical coercion. This circuit has made clear that some use of force by an officer making an arrest is necessary and altogether lawful, regardless of the severity of the offense. And the courts have instructed us that the nature and extent of the physical injury sustained by plaintiff is relevant in determining whether the amount and type of force used was excessive. So doesn't Lee doesn't leave versus Ferraro cause you all sorts of problems on the qualified immunity front. We don't believe so, Your Honor, because we go back to, you know, I think the cases that we would rely on both be on the qualified immunity front would involve Nolan crew Charles Jones and post. And so, all of the facts are alleged in that case are extremely similar to what we see here with what Mr. Brooks alleges, and in each of those the court found either we're dealing with the minimum force or the officers entitled to qualified immunity. So, some of the things that we know in regards to the last time if we took Mr. Brooks statements right so he says that the alleged lamb aggravated a pre existing shoulder condition. That is the only allegation that he makes concerning any injuries from this alleged slam. And we know from, but I mean my understanding is that. Let me, let me ask you to assume something for purposes of my question. If you have excessive force. The fact that you don't have lingering harm doesn't eliminate the excessive force claim right. Right, Your Honor, we agree with that. However, I think we don't even get to that point because we're kind of operating like maybe Charles is the best example so so we're operating on the fact that this incident we know it's not a dispute, this incident took place, while the arrest was occurring. So we don't have a situation like a lot of the cases that have highlighted in this supplemental brief, where a plaintiff has already been handcuffed been subdued were in the act of arresting a person. And when that occurs you know officers and the courts have recognized, there is going to be some force involved in effectuating that arrest. Now, what we also let me ask you this just back to judge Jordan's question about Lee. I just don't remember you can tell me but I mean had the woman in Lee been cuffed. Or was that that was in the process of an arrest as well I mean, the reason that Lee seems so similar to me is that it's a minor crime. There's no indication that the crime was ongoing. There's no indication that she was resisting. And yet she alleged that she was slammed whether she was or wasn't she alleged that she was slammed and that just feels an awful lot like this case, and leave your honor this is the individual who she alleged that her head was slammed on the trunk of a vehicle, I believe, if I'm okay so downtown Miami if I'm remembering correctly not that it matters. It's actually does when she when she alleged that her head was slammed into the back of the trunk that was after she had been handcuffed, and the court actually makes a distinction and that opinion where it touches it's very briefly but it touches on the allegations that occurred pre handcuffed and it decided to leave that alone but what it was focusing its decision on is that after Miss Lee was handcuffed. That's when the officer slander had into the trunk of that vehicle and so that is a very important distinction here that was after the actual act of the breast occurred. And in Mr. Brooks case again we're in this universe where it is when this arrest is occurring, that he alleges that this land took place. Um, let me briefly since I am getting a little bit low on time let me just briefly turn to the allegations of the handcuffs. So, regarding Mr Brooks allegations that excessive force was used because the handcuffs were applied too tight for you do Miss painter let me ask you one more question. The complaint alleges that the body slamming allegedly occurred. Not during the arrest. But while the officer was still asking Mr. Brooks certain questions. Does that change your position at all. It does not your honor because in this instance we do have the benefit of having a recording and again that unquestioned objectivity so in that recording, if you go to 213 to 219. Here very clearly that is when Officer Miller is saying, you know, turn around, place your hands behind your back and you actually hear the handcuffs being applied. So that is how we know without question that it was occurring during the arrest. Anything to the contrary that Mr Brooks might assert we would argue that the record blatantly contradicts those assertions. Go right ahead to the other point. Thank you, Your Honor. So, it is a similar argument with the handcuffs we do argue that the recording in this matter blatantly contradicts that a couple of factual matters, you know you've been here officer Miller, telling Mr Brooks how best to sit in the car so that he can remain comfortable. You have these 52 minutes of recording in this case and there's not a single thing that remotely supports what Mr Brooks is alleging occurred. However, it's the same thing here, even if we wanted to put the recording aside case laws such as Rodriguez Huebner and gold established that Mr Brooks would be unable to overcome qualified immunity on those allegations. The only injuries that he alleges is that the handcuffs were too tight that he had two months of episodes of numbness in his hands and pain in his wrists and elbows. So we would direct the court to the opinion and Huebner and how those alleged injuries were much greater than that and the court decided that's not enough to overcome the issue of qualified immunity. Mr Brooks alleged injuries are even less than what you've never alleged. I see that I am at a time, we do rely on our brief for the remaining arguments and we are asking that this court affirmed the district courts decision to grant summary judgment in our favor on all of Mr Brooks claim. Thank you very much was painter. I'd like to start by talking about the distinction of we handcuffing distinction. This part is actually rejected rejected that distinction and Steven's video on this court said the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing, but in the course of the investigation So of course, if an officer needs to use some force to arrest someone as these as these cases say they can use force to effectuate the arrest, then that's reasonable, but here no force was needed to effectuate the arrest. There was no reason to slam Mr Brooks into a patrol vehicle, just to arrest. So the fact that we involve handcuffs isn't isn't a material distinction. I also heard the city side of chain of cases, Nolan crew Jones and post. Those are all de minimis cases, not like this case where we have, as Mr Brooks alleged in his declaration the attached to his complaint. He had two months of pain, two months is a big deal. It's not like some of these other cases where plaintiffs didn't seek medical treatment, where they had bruises and scratches. He's saying he had episodes of numbness in his hands, wrist and elbow. So, these are serious injuries, and they don't fall into the de minimis cases. Finally, you know, whether. I don't know if I can do this, I have a frame of the dash cam, and you can see the car here, you can't see the other side of that car. So, whether the car was in front of the dash cam, you can't see the other. Unless this court has any other questions. I'll, I'll see the remainder of my time and ask that this court reverse the district court summary judgment. Very much.